ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

———————

THOMAS WHITE

*v.*

TIDE WATER OIL COMPANY.

1. Where the owner of land, in conveying a portion of it by deed, bounds that portion by a street laid down upon a city map, as though that street were then an existing highway, though, in fact, it is not opened as such, the grantee is entitled, as against the grantor and his assigns, to have the street kept open to its full width.

2. If, after such conveyance, the grantor obstructs the street with a fence or wall, he may be compelled, by mandatory injunction, to remove the obstruction.

3. Incidentally to the award of such an injunction, the complainant's right will be determined by this court.

On demurrer.

*Mr. Alvah A. Clark,* for the demurrant.

*Mr. DeWitt Van Buskirk, contra.*

THE CHANCELLOR.

The object of the bill demurred to is to obtain a mandatory decree and injunction, which will secure the removal of a fence and wall which the defendant has erected in the centre of a strip of land, in the city of Bayonne, known as Twenty-sixth street, between Central avenue and Avenue I.

The bill alleges that the complainant and his brother, Samuel C. White, were the owners of lands in the city of Bayonne, which adjoined lands of the Central Railroad Company of New Jersey, and that the division line between their lands and the lands of the railroad company ran diagonally across Twenty-sixth street, as it was designated upon the official map of the city, so that they and the railroad company each had property on both the northerly and southerly sides of the centre line of that street.

Twenty-sixth street was then, and is now, unopened and unused as a public highway.

In December, 1878, the Whites, on the one part, and the railroad company, on the other part, agreed to exchange lands so that the Whites should own all the land north of the centre of Twenty-sixth street, and the railroad company should own all the property south of the middle of that street, between the avenues mentioned. Accordingly, the Whites, by their deed executed on the 30th of December, 1878, conveyed to the railroad company all the land which they owned south of the centre of Twenty-sixth street, by the following description :

White *v.* Tide Water Oil Co.

. "All those certain pieces, parcels and lots of land situate, lying and being on the southerly side of Twenty-sixth street, between Central avenue and Avenue H, in the Second ward in the city of Bayonne, and marked and numbered on the city map of lots in said ward, in the office of the city surveyor, at the city hall of said city of Bayonne, by the numbers ten to twenty-nine, as by reference to said map may be shown, bounded and described as follows: Beginning at the southwest corner of Avenue H and Twenty-sixth street; thence running westerly along the southerly side of said street, five hundred and ninety-six feet and sixty-six one hundredths, to land of said party of the second part; thence southeasterly along the land of said party of the second part, one hundred and eighty-eight feet and seventy-three one hundredths; thence northeasterly along the land of said party of the second part, three hundred and twenty-six feet and forty-four one hundredths, to Avenue H; thence northerly, six feet and three one hundredths, to the place of beginning.

"Together with so much of said Twenty-sixth street and Avenue H, belonging to the said party of the first part, as lies on the southerly side of a line along the centre of said Twenty-sixty street, between Central avenue and Avenue I."

And on the same day the railroad company, by its deed, conveyed to the Whites all of its land north of the centre of Twenty-sixth street, by the following description:

"All that block, piece, tract or parcel of land and premises hereinafter particularly described, situate, lying and being in the city of Bayonne, in the county of Hudson and State of New Jersey, and bounded and described as follows: Beginning at the intersection of Twenty-seventh street with what was formerly the road leading to Cornelius Vreeland; thence easterly along the centre of Twenty-seventh street to the centre of Avenue I; thence southerly along the centre of Avenue I to the centre of Twenty-sixth street; thence westerly along the centre of Twenty-sixth street to the southerly line of the land of said parties of the second part; thence easterly along the land of said parties of the second part to the middle of said road formerly leading to said Vreeland's; thence northerly along the middle of said road to the place of beginning; said lot being part of block number three hundred and sixty-eight on the city map filed in the city clerk's office of said city of Bayonne, and including lots numbered on said map from twenty-four to forty-eight inclusive, and forty-two and one-half, as by reference to said city map will more fully appear."

The bill alleges that the purpose of the conveyances was to square the boundary lines of the properties of the respective parties to them with Twenty-sixth street, in order that the lands might be utilized in connection with the street as an approach to

them, and that the lands now owned by the Whites have no outlet, except through Twenty-sixth street.

Since the making of the deed mentioned, the complainant has acquired his brother's interest in the lands north of the centre of Twenty-sixth street, and the defendant has acquired title to the lands of the railroad company south of the centre of that street.

The defendant has lately erected a wall and fence along the centre line of Twenty-sixth street, and thereby has excluded the complainant from all use of the southerly half of that street.

The bill does not exhibit that the municipal authorities of Bayonne have done any act which can be construed into an acceptance of a dedication of the land within the limits of the street to the public use as a highway.

The ground of demurrer is, that the bill fails to state a case for equitable cognizance.

It is necessary, in the first place, to ascertain whether the complainant has any right in the southerly half of Twenty-sixth street, and if so, what that right is.

He cannot found a right in lands, in a mere verbal understanding, either as to the uses to which the lands are to be put, or as to the meaning that shall be ascribed to the deeds which convey it. His right must come by grant or reservation, expressed in the deeds, which were the only writings concerning the property, or necessarily implied from the terms and language of those instruments, when read in the light of the situation of the lands affected by them and the parties to them at the time when they were made. He acquires no distinct private right by a dedication of the lands in the street to the public use. The public alone can take a right of way by dedication. *Trustees of M. E. Church* v. *Hoboken, 4 Vr. 13; Godd. Easem. 263.* He must take by grant. Where he purchases land from one who is also the owner of land situate on an abutting street, represented upon a map made either by the owner or by public authority and referred to in the description of the land, which description bounds the land purchased by those streets, there arises an implied agreement that he shall have the use of the streets, and he thereby acquires a right of way over them. Such

ı right was recognized by Chancellor Zabriskie, in *Morris and Essex R. R. Co.* v. *Prudden, 4 C. E. Gr. 386, 391,* in this language:

" The purchasers of the lot acquire an easement or right in the lands so laid out as streets, and have a right to pass over them, and to have them taken by the proper authorities for public streets, without compensation to the owner.   By such dedication the streets do not become public highways; they are not such until accepted by the proper public authorities, or until used by the public as highways for twenty years.   Until then there is no right acquired by the public, but only by the purchasers of lots, by whose consent the easement may be surrendered and the land freed from all claim by the rest of the public."

And also by Mr. Justice Depue, who pronounced the judgment of the court of errors and appeals, in the same case, *5 C. E. Gr. 535,* although he there disclaimed intention to finally affirm the doctrine, by his statement that it was then the generally accepted doctrine in courts of our sister states, that the grantee is entitled, as against his grantor and his assigns, to have the street, by reference to which his deed is made, kept opened to its full width, either as an incident of the grant itself or by force of a covenant implied by the grant; and afterwards by the same distinguished judge, in *Booraem* v. *North Hudson R. R. Co., 13 Stew. Eq. 557,* where he clearly states the principle upon which the right rests, in the following language:

" Indeed, wherever a dedication of a public highway is affected—as it usually is—by means of conveyances to private persons, by reference to a proposed street over other lands of the grantor, the private rights of the several grantees precede the public right, and are the source from which the public rights spring.   By such conveyances the grantees are regarded as purchasers by implied covenant of the right to the use of the street as a means of passage to and from their premises, as appurtenant to the premises, and this private right of way in the grantees is wholly distinct from and independent of the right of passage to be acquired by the public.   And it is upon the theory that the

owner of the fee, by grants of rights of way in the street, to his grantees, has parted with all beneficial ownership in the street, that the public authorities may take it for a public highway, without any compensation to him."

But prior to the last stated case, the right was recognized by the court of errors and appeals, in *Clark* v. *The City of Elizabeth, 11 Vr. 172*, where Chancellor Runyon, who delivered the opinion of the court, said, that it extended to all lands of the vendor in the street, even though they were at a distance from the land sold. And later, in the case of *Lennig* v. *Ocean City Association, 14 Stew. Eq. 606*, the implied right was held to extend to the maintenance of blocks designated upon the map by which the land was sold as camp-ground for religious services and tenting purposes, although it did not all adjoin the land sold to the complainant.

In *Dodge* v. *The Pennsylvania R. R. Co., 16·Stew. Eq. 351; affirmed on appeal, 18 Stew. Eq. 366*, Vice-Chancellor Van Fleet states it to be established that where land is conveyed as abutting on a proposed street, before a public highway in fact exists there, and a way over such proposed street is essential to the beneficial enjoyment of the land granted, or even a desirable accessory to it, the implication is, that until the proposed street become an actual highway, the grantee shall have the use of it as a means of passage to and from his land. The principle of these cases is also recognized and applied in *Dill* v. *The Board of Education of Camden, 2 Dick. Ch. Rep. 421.*

There can be little question that the deeds here involved sufficiently recognize the part of Twenty-second street in question to grant a right of way over it, to and from the lands they convey to the grantees in them and their assigns. It is observed that the deed given by the Whites expressly bounds the land it conveys on the street, while the deed from the railroad company preserves the property line in the centre of the street, contains no expressions. This form of description in the latter deed has given rise to the claim that its purpose is to exclude the idea of a grant of a right of way. I do not think that such a claim is tenable. The description most clearly recognizes Twenty-sixth

street as an existing way.   If it had been intended to preclude the implication that arises from that recognition, the task of the draughtsman of the deed would not have been difficult.   I think that the purpose in running the property line in the middle of the street was merely to reserve the fee subject to the easement. The same object was accomplished in the deed from the Whites, in which the lands outside of and within the street were separately described.

Arriving at the conclusion that the complainant has a right of way over the defendant's lands in the part of Twenty-sixth street which is in question, the next inquiry is, whether this court will declare that right, and, by injunction, enforce the removal of the fence that obstructs the free use of the way.

The complainant's right extends to every part of the land within the bounds of the street at the point in question.   He is entitled to the unobstructed use of all of it.   It will not do to say that the northerly half, which is upon his own property, will be sufficient for his needs.   Under the implied grant he is to have the benefit of the whole way, so that he may dispose of his property as fronting upon it, open to its full width, and reap therefrom the enhanced price that such a circumstance will bring to him.   *Trustees of Watertown* v. *Cowen, 4 Paige 510; Lennig* v. *Ocean City Association, supra.*

If the way be permanently obstructed by the fence and wall in question, the complainant will be without adequate remedy at law.   He may repeatedly, by successive suits, recover damages, because of the continuance of the nuisance; but such recoveries will not necessarily suffice to secure him the enjoyment of his right.   In such a case adequate relief can only be afforded in equity (*Gawtry* v. *Leland, 13 Stew. Eq. 323; Dill* v. *Board of Education of Camden, supra*), by mandatory decree and injunction. *Rogers Locomotive and Machine Works* v. *Erie Railway Co., 5 C. E. Gr. 379.*   Incidentally to the award of that relief, the complainant's legal right must, and properly will be, determined and declared in this court.   *Gawtry* v. *Leland, supra; Lehigh Zinc and Iron Co.* v. *Trotter, 16 Stew. Eq. 205; Hart* v. *Leonard, 15 Stew. Eq. 416; Dill* v. *Board of Education of Camden, supra.*

The demurrer will be overruled, with costs.